UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 20-80** |
| v. | * | **SECTION: "I"** |
| **RYAN WHEATEN** | * | |
| | * | |

\*       \*       \*

## FACTUAL BASIS

Should this matter have gone to trial, the government would have proved through the introduction of reliable testimony and admissible tangible exhibits, including documentary evidence, the following to support the allegations charged by the government in Count 1 of the Indictment now pending against the defendant, **RYAN WHEATEN**, charging him with a violation of Title 18, United States Code, Section 371, namely, conspiracy to commit mail fraud. The Defendant, along with his co-conspirators and others, beginning at a time unknown and continuing through the present, in the Eastern District of Louisiana, and elsewhere, conspired to commit mail fraud in connection with two staged accidents that occurred on May 17, 2017.

If this case had proceeded to trial, witnesses would testify that, on or about May 16, 2017, Co-Conspirator C asked Troy Smith ("Smith") if he was interested in participating in a staged automobile accident in New Orleans, Louisiana, the next day, and Smith responded affirmatively. Witnesses would testify that Smith recruited Bernell Gale ("Gale") and Smith's family member, Passenger A[1] to be in the staged accident, and that Co-Conspirator C recruited Marvel Francois ("Francois").

---

[1] Passenger A died in an unrelated auto accident on or about July 22, 2018.

AUSA
Defendant
Defense Counsel

At trial, the government would present text messages showing that, on or about May 16, 2017, Co-Conspirator A contacted Damien Labeaud ("Labeaud") to arrange for Labeaud to help stage two automobile accidents the next day. Labeaud was known as a "slammer," or an individual who drove vehicles and intentionally collided with 18-wheeler tractor-trailers in order to stage accidents. Phone records show that Labeaud then contacted Mario Solomon ("Solomon"), to arrange for Solomon to serve as a "spotter," or an individual who would follow Labeaud in a separate vehicle and would pick up Labeaud after the staged accidents in order to flee the scene and evade detection.

Phone records further evidence that, on the morning of May 17, 2017, prior to the accidents, Attorney A called Co-Conspirator A four times. Co-Conspirator A also texted Labeaud to provide status updates regarding Co-Conspirator A's travel from the area of Gibson, Louisiana, to New Orleans, Louisiana. Phone records also show that Francois and Co-Conspirator A exchanged phone calls on May 17, 2017, both in the morning and at night.

Prior to May 17, 2017, **RYAN WHEATEN** ("**WHEATEN**") agreed to participate in a staged automobile accident with a tractor-trailer in order to obtain money through fraud. On May 17, 2017, Randle, **WHEATEN**, and Dakota Diggs ("D. Diggs") met at Randle's house in Gibson, Louisiana. Randle, **WHEATEN**, and D. Diggs then travelled together to a parking lot by a fast food restaurant in New Orleans, Louisiana, in a white 2004 Ford F-150 truck belonging to Co-Conspirator C ("Ford F-150"). Randle, **WHEATEN**, and D. Diggs discussed their plan to participate in a staged automobile accident that day.

Witnesses would testify that, Smith, Gale, Francois, and Passenger A traveled from the area of Houma/Gibson, Louisiana, to the same parking lot that morning, in New Orleans, Louisiana. Smith, Gale, Francois, and Passenger A traveled in a blue 2007 Dodge Durango ("Durango")



AUSA
Defendant
Defense Counsel

that belonged to Francois' son. Labeaud and Solomon went to the same parking lot in a silver Chevrolet Silverado pick-up truck ("Silverado"). At trial, the government would present evidence that Co-Conspirator A, Co-Conspirator C, and Tanya Givens also traveled to New Orleans that day.

It was agreed that Labeaud would stage a car accident first with the Ford F-150 and then he would stage a car accident with the Durango. Randle, **WHEATEN**, and D. Diggs agreed to allow Labeaud to drive the Ford F-150. Randle, **WHEATEN**, and D. Diggs remained in the Ford F-150 while Labeaud drove around looking for a tractor-trailer to collide with. Smith, Gale, Francois, and Passenger A followed the Ford-F-150 in the Durango. Surveillance footage from a nearby building captures a 2006 Freightliner tractor-trailer merging onto US Highway 90, followed by a blue Dodge Durango, a white Ford-F-150, and a silver Chevrolet Silverado.

### The Ford F-150 Accident

Phone records show that, at approximately 1:01 P.M., Solomon texted Labeaud, "Watch that white truck on the right hand side." Labeaud said, "Hold on," and the passengers braced for impact. Labeaud, while driving the Ford F-150 on Calliope Street, then intentionally sped up and collided with a 2006 Freightliner tractor-trailer operated by Stevie B's Trucking that was merging onto US Highway 90 Eastbound. Labeaud exited the Ford F-150 after the collision. Randle got into the driver's seat of the Ford F-150 to make it appear that he had been driving at the time of the accident. Solomon waved down the driver of the tractor-trailer and stated that the tractor-trailer had caused the accident. Phone records indicate that **WHEATEN** exchanged phone calls with Smith, Co-Conspirator A, and Co-Conspirator C both before and after this accident. Co-Conspirator A also texted Labeaud after this accident.

An NOPD officer arrived at the scene. NOPD dash camera footage captures Randle

3

AUSA
Defendant
Defense Counsel

falsely reporting that he was the driver of the F-150, and that the tractor-trailer had struck the F-150. Phone records show that Randle called Co-Conspirator A and Co-Conspirator C later that afternoon, and that **WHEATEN** called Co-Conspirator A that afternoon.

After the accident, **WHEATEN** hired Attorney A to represent him in connection with the staged accident. **WHEATEN** received "client advances on settlement" from Attorney A, in the form of checks in the approximate amounts of $700.00 on or about May 17, 2017, and $980.00 on or about July 26, 2017. Attorneys A and B referred Randle and **WHEATEN** to doctors and healthcare providers for medical treatment. Randle subsequently switched to a different attorney.

On or about March 28, 2018, Attorney D filed a Petition for Damages in the Civil District Court for the Parish of Orleans ("CDC") on behalf of D. Diggs ("D. Diggs Lawsuit"). On or about May 17, 2018, Attorneys A and B filed a Petition for Damages in CDC on behalf of **WHEATEN** ("Wheaten Lawsuit"), and a Petition for Damages was filed in CDC on behalf of Randle ("Randle Lawsuit"). All three petitions were personal injury lawsuits seeking damages from Stevie B's Trucking, National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC"), and Truck Driver B in connection with the May 17, 2017 staged accident involving the Ford F-150. The allegations in these lawsuits were false in that they did not contain information about how Labeaud intentionally caused the May 17, 2017 accident between the Ford F-150 and the 2006 Freightliner tractor-trailer. Furthermore, these lawsuits falsely alleged that Randle had been the driver of the Ford F-150 during the accident and omitted material information about how the passengers had agreed to stage the accident with Labeaud.

On or about May 31, 2018, the Wheaten Lawsuit and the Randle Lawsuit were consolidated into one lawsuit in CDC ("Wheaten/Randle Lawsuit"). On or about September 3, 2018, Attorney D sent an email to counsel for Stevie B's Trucking, NUFIC, and Truck Driver B containing a

4

AUSA _(initials)_
Defendant ___
Defense Counsel _(initials)_

settlement demand on behalf of client D. Diggs, demanding approximately $25,000.00 in settlement. On or about September 7, 2018, Randle provided false testimony in a deposition about the May 17, 2017 accident. Specifically, Randle testified that he was the driver of the Ford F-150 at the time of the accident, and that the tractor-trailer had collided with the Ford-F-150.

At trial, the Government would present evidence that the loss amount associated with the D. Diggs Lawsuit and the Randall/Wheaten Lawsuits was approximately $10,000.00, which was paid on behalf of D. Diggs for the D. Diggs Lawsuit. Specifically, on or about January 17, 2019, Counsel for Stevie B's Trucking, NUFIC, and Truck Driver B mailed an envelope via USPS to the law firm of Attorneys C, D, and E, **** Canal Street, New Orleans, LA 70119, containing a check in the amount of approximately $5,000.00 for D. Diggs. Additionally, on or about February 25, 2019, a settlement check for D. Diggs in the amount of approximately $5,000.00 was deposited in an account for the law firm of Attorneys C, D, and E by Randle's insurance company, Financial Indemnity Company.

### The Durango Accident

On May 17, 2017, after observing the Ford F-150 accident, Smith, Gale, Francois, and Passenger A agreed to allow Labeaud to drive the Durango. Smith, Gale, Francois, and Passenger A remained in the Durango. Labeaud drove the Durango to locate another vehicle to collide with. Just before 2:00 P.M., while driving on Chickasaw Street in New Orleans, Labeaud intentionally collided with a 2017 Peterbilt tractor-trailer operated by Tennessee Commercial Warehouse, Inc. ("TCW"), which was turning onto Louisa Street. Labeaud exited the Durango after the collision. Francois got behind the wheel of the Durango to make it appear that Francois was driving the vehicle at the time of the staged accident. Labeaud instructed the passengers to state that they were stopped at the stop sign when the collision occurred. The Government would



AUSA
Defendant
Defense Counsel

present evidence at trial that Labeaud was picked up by Solomon in the Silverado, and as he was leaving, Labeaud shouted at the driver of the tractor-trailer, in sum and substance, "Didn't you see the car at the stop sign?"

9-1-1 recordings capture Francois contacting the NOPD and falsely reporting that a tractor-trailer had struck her vehicle. Smith, Gale, Francois, and Passenger A waited several hours for NOPD to arrive at the scene of the accident. NOPD body camera footage shows that, when an NOPD officer arrived, Francois falsely stated that she had been driving the Durango and that the tractor-trailer had struck her vehicle.

After making the false police report, Smith, Gale, Francois, and Passenger A retained Attorney A. Francois told Attorney A that they were not sure who to say was driving, because Francois insured the Durango, but Smith had a CDL license. Attorney A responded that it did not matter who they listed as the driver, because the tractor-trailer's insurance would take care of the damages. During the meeting, Attorney A asked Smith, Gale, Francois, and Passenger A if they were injured in the accident. Smith, Gale, Francois, and Passenger A all replied that they were not injured or hurt in the accident. Attorney A then explained that their recovery would depend on the amount and type of medical treatment they received. Attorney A said if someone elected to have surgery, he or she could expect to receive a much greater settlement. Smith, Gale, and Francois, elected not to have surgery. Attorney A referred Gale and Smith to a chiropractor, and referred Francois to a pain specialist.

On or about March 1, 2018, Attorney A's law partner, Attorney B, mailed an envelope via the United States Postal Service ("USPS") from Louisiana to Gallagher Basset [sic], P.O. Box 2934, Clinton, Iowa 52733, containing a settlement demand on behalf of Gale. On or about May 17, 2018, Attorney A filed a Petition for Damages in CDC, on behalf of Smith, Gale, and Passenger

AUSA
Defendant
Defense Counsel

A ("Smith Lawsuit"). The Smith Lawsuit was a personal injury lawsuit seeking damages from TCW, Zurich American Insurance Company ("Zurich"), GoAuto Insurance Company ("GoAuto"), Francois, and Truck Driver C in connection with the May 17, 2017 staged accident involving the Durango. That same day, a Petition for Damages was also filed on behalf of Francois in the CDC ("Francois Lawsuit"). The Francois Lawsuit was a personal injury lawsuit seeking damages from TCW, Zurich, and Truck Driver C in connection with the May 17, 2017 staged accident involving the Durango.

On or about June 5, 2018, Attorney B mailed a copy of the Smith Lawsuit via the USPS from New Orleans, Louisiana, to Truck Driver A in Jackson, Mississippi. On or about July 12, 2018, Attorney B signed an affidavit of service, notarized by Attorney A, and filed it in conjunction with the Smith Lawsuit. This affidavit verified that Attorney B had placed the Smith Lawsuit in the mail. The allegations in the Smith Lawsuit were false in that they did not contain information about how Labeaud intentionally caused the May 17, 2017 accident between the 2017 Peterbilt tractor-trailer and the Durango. Furthermore, the Smith Lawsuit falsely alleged that Francois had been the driver of the Durango during the accident and omitted material information about how the Defendant had agreed to stage the accident with Labeaud. No settlement funds were paid in connection with the Smith Lawsuit or the Francois Lawsuit.

In sum, the Government's evidence would prove the defendant, **RYAN WHEATEN**, conspired to commit mail fraud by causing the mailing of a settlement payment for the D. Diggs Lawsuit, which sought monetary damages premised on falsehoods in connection with the May 17, 2017 staged automobile accident.

AUSA 
Defendant
Defense Counsel

## Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **WHEATEN**, and/or the government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for his guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offense by **WHEATEN**.

The above facts come from an investigation conducted by, and would be proven at trial by credible testimony from, *inter alia*, Special Agents and forensic examiners from the Federal Bureau of Investigation and admissible tangible exhibits in the custody of the FBI.

READ AND APPROVED:

_____
RYAN WHEATEN
Defendant

_____
JUDSON MITCHELL
Counsel for Defendant

_____
MARIA M. CARBONI
BRIAN M. KLEBBA
Assistant United States Attorneys