```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

*************************************************************
UNITED STATES OF AMERICA

                              Criminal Action No. 20-80
VS.                           Section "I"
                              New Orleans, Louisiana
                              January 12, 2022

RYAN WHEATEN
*************************************************************

                   TRANSCRIPT OF SENTENCING HEARING
             HEARD BEFORE THE HONORABLE LANCE M. AFRICK
                    UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:            Maria Michelle Carboni
                               U.S. Attorney's Office
                               650 Poydras Street
                               Suite 1600
                               New Orleans, LA 70130




FOR THE DEFENDANT:             Royal Judson Mitchell, Jr.
                               Loyola New Orleans College
                               Of Law
                               7214 St. Charles Avenue
                               Box 902
                               540 Broadway
                               New Orleans, LA 70118




Official Court Reporter:       Nichelle N. Wheeler, RMR, CRR
                               500 Poydras Street, B-275
                               New Orleans, Louisiana 70130
                               (504) 589-7775

    Proceedings recorded by mechanical stenography,
transcript produced via computer.
```

**1**                    **P R O C E E D I N G S**

01:05:18PM   **2**                    (Call to order of the court.)

01:05:18PM   **3**          THE CASE MANAGER:  Criminal matter 20-80, *United*

01:05:22PM   **4**   *States of America v. Ryan Wheaten*.  This matter is set for

01:05:23PM   **5**   sentencing.  Counsel, please make your appearance for the

01:05:25PM   **6**   record.

01:05:26PM   **7**          MR. MITCHELL:  Judson Mitchell on behalf of Ryan

01:05:30PM   **8**   Wheaten, who is present in court.

01:05:31PM   **9**          MS. CARBONI:  Good afternoon, Your Honor, Maria

01:05:34PM   **10**  Carboni on behalf of the United States.

01:05:35PM   **11**         THE COURT:  All right.  Thank you.  We are here for

01:05:37PM   **12**  sentencing today.  Any reason why sentencing should not

01:05:40PM   **13**  proceed?

01:05:41PM   **14**         MS. CARBONI:  Nothing from the government.

01:05:42PM   **15**         THE COURT:  All right.

01:05:42PM   **16**         MR. MITCHELL:  No, Judge.

01:05:43PM   **17**         THE COURT:  Have you and your client had an

01:05:45PM   **18**  opportunity to read the presentence report?

01:05:47PM   **19**         MR. MITCHELL:  We have, Judge.

01:05:47PM   **20**         THE COURT:  Okay.  Other than the objections, I've

01:05:50PM   **21**  read the objections, the responses, the motions, the

01:05:53PM   **22**  sentencing memorandum asking for a departure, or other

01:05:58PM   **23**  relief, as well as a response by the government.  Is there

01:06:01PM   **24**  anything else that I need to address other than those --

01:06:03PM   **25**         MR. MITCHELL:  No, Judge.  Everything that we would

01:06:06PM **1** argue are contained in those memos.

01:06:08PM **2**     THE COURT:  All right.  Well, let me first deal with

01:06:09PM **3** the objections.  The defendant raises three objections to the

01:06:13PM **4** presentence report.  The government opposes the objections.

01:06:16PM **5**     For the following reasons, the Court overrules the

01:06:18PM **6** objections:  Objection No. 1:  Wheaten objects to paragraph

01:06:23PM **7** 85 of the presentence report which applies a two-level

01:06:25PM **8** offense increase pursuant to U.S. Sentencing Guidelines

01:06:29PM **9** Section 2B1.1(b)(1)(b) because the defendant's responsible

01:06:30PM **10** for the victims' loss of $10,000.  Wheaten acknowledges that

01:06:39PM **11** co-conspirator Dakota Diggs' lawsuit led to the payout of

01:06:40PM **12** $10,000 from the victim and further acknowledges that legal

01:06:43PM **13** authority which would permit funds obtained by

01:06:45PM **14** co-conspirators to be counted against them for purposes of

01:06:48PM **15** calculating loss.  However, Wheaten argues that it would be

01:06:50PM **16** inequitable to increase the offense level in this case

01:06:53PM **17** because Wheaten "did not directly participate in the Diggs

01:06:55PM **18** suit and received nothing from the victims in this suit."

01:06:55PM **19**     The scope of relevant conduct attributable to a

01:07:01PM **20** defendant for sentencing purposes is set forth in U.S.

01:07:02PM **21** Sentencing Guideline 1B1.3(a)(1)(B) which states that a

01:07:06PM **22** defendant is liable for "all reasonably foreseeable acts and

01:07:09PM **23** omissions of others in furtherance of, jointly undertaking

01:07:13PM **24** criminal activity."  The guidelines measure criminal

01:07:13PM **25** culpability in economic crimes according to their pecuniary

01:07:18PM  1   impact on victims.  See *U.S. v. Olis,* 429 F.3d 540, 545 (5th

01:07:26PM  2   Cir. 2005).

01:07:26PM  3       In case of fraud, this means the defendant is liable

01:07:28PM  4   for the total dollar amount that victims were defrauded.  See

01:07:32PM  5   *U.S. v. Hull*, 160 F.3d 265, 269 (5th Cir. 1998)(citing 1B1.3,

01:07:42PM  6   Comment 4, illustration (C)(ii).

01:07:42PM  7       Under Section 2B1.1, actual loss is defined as the

01:07:48PM  8   "reasonably foreseeable pecuniary harm that resulted from the

01:07:48PM  9   offense," U.S. Sentencing Guideline 2B1.1, Comment 3.  A

01:07:53PM  10  "reasonably foreseeable pecuniary harm means pecuniary harm

01:07:56PM  11  that the defendant knew or, under the circumstances,

01:07:59PM  12  reasonably should have known, was a potential result of the

01:08:01PM  13  offense."  Same comment.

01:08:03PM  14      The government argues that a loss of $10,000 was

01:08:06PM  15  caused directly by Wheaten's offense conduct and by the

01:08:08PM  16  jointly undertaken offense conduct with his co-conspirators.

01:08:11PM  17  Further, the government asserts that Wheaten was aware that

01:08:13PM  18  his co-conspirators intended to bring fraudulent legal claims

01:08:16PM  19  arising from the staged accidents.  Therefore, the loss paid

01:08:21PM  20  by the insurance companies arising out of this collision was

01:08:24PM  21  reasonably foreseeable to Wheaten.  It's important its

01:08:27PM  22  contention the government cites factually similar cases in

01:08:28PM  23  which courts have found that all participants in staged car

01:08:31PM  24  accidents conspiracies are responsible for the losses

01:08:33PM  25  resulting from the reasonably foreseeable acts of

01:08:36PM 1   co-conspirators, see *U.S. v. Padron*, 527 F.3d 1156, 1161

01:08:44PM 2   (11th Cir. 2008), *U.S. v. Lezcano*, 296 F. App'x 800, 809-10

01:08:54PM 3   (11th Cir. 2008).

01:08:54PM 4        Additionally, the government correctly cites the

01:08:56PM 5   application notes to the guidelines which state that the

01:08:59PM 6   offense level may be based on gain to the defendant "only if

01:09:02PM 7   there is a loss but it reasonably cannot be determined."

01:09:03PM 8   That's U.S. Sentencing Guideline 2B1.1, Comment 3(B).

01:09:07PM 9   Accordingly, because the loss to the victims is reasonably

01:09:11PM 10  ascertainable in this case it's not appropriate to determine

01:09:12PM 11  loss based on gain to the defendant.  The Court concurs with

01:09:16PM 12  the government's assessment.  The two-level offense level

01:09:17PM 13  increase in this case is not inequitable.  To the contrary,

01:09:21PM 14  it falls squarely within the ambit of Section 2B1.1 and the

01:09:24PM 15  objection's overruled.

01:09:24PM 16       Objection No. 2:  Wheaten objects to paragraph 86 of

01:09:29PM 17  the presentence report which applies a two-level increase

01:09:31PM 18  because the offense involved the conscious or reckless risk

01:09:37PM 19  of death or serious bodily injury pursuant to

01:09:38PM 20  Section 2B1.1(b)(16)(A).  Wheaten argues that the factual

01:09:41PM 21  basis "is silent to the extent of his knowledge of the scheme

01:09:43PM 22  and his awareness of the risk of bodily injury that might

01:09:46PM 23  result" and that he "did not drive the vehicle and did not

01:09:49PM 24  directly initiate any activity that lead to injury or death."

01:09:50PM 25  The government responds that Wheaten admitted in his factual

01:09:54PM 1   basis that he agreed in advance to participate in a

01:09:56PM 2   purposeful collision with a tractor-trailer on a highway and

01:09:59PM 3   further argues that the "offense carried an inherent risk of

01:10:02PM 4   serious bodily injury to the participants, the driver of the

01:10:05PM 5   tractor-trailer, passengers in other passing vehicles, and

01:10:06PM 6   even pedestrians."

01:10:08PM 7        Although the Fifth Circuit has not considered this

01:10:10PM 8   enhancement in this type of staged-accident scheme, several

01:10:14PM 9   circuits have concluded that staged accidents of this sort

01:10:15PM 10  inherently entail a risk of serious bodily injury or death.

01:10:18PM 11  See *U.S. v. Sosa-Baladron*, 800 F. App'x 313, 330-331, (6th

01:10:35PM 12  Cir. 2020), *U.S. v. Lucien*, 347 F.3d 45, 56-57 (2nd Cir.

01:10:38PM 13  2003); *U.S. v. Hoffman*, 9 F.3d 49, 50 (8th Cir. 1993), which

01:10:43PM 14  is a per curiam case.

01:10:45PM 15       The Court joins in the conclusion that an agreement

01:10:48PM 16  to participate in a staged accident entails the conscious or

01:10:52PM 17  reckless risk of serious bodily injury or death and overrules

01:10:54PM 18  the objection.

01:10:55PM 19       Objection No. 3, Wheaten objects to paragraph 88 of

01:10:58PM 20  the presentence report in which Wheaten receives no

01:11:00PM 21  adjustment for his role in the offense and argues that he

01:11:02PM 22  should receive a reduction based on his minor or minimal role

01:11:04PM 23  in the charged offense.  Wheaten also raises this argument

01:11:08PM 24  his motion for downward departure and/or adjustment from

01:11:10PM 25  sentencing guidelines.  That's Record Document No. 328.  In

01:11:14PM **1**  support, defendant argues that unlike his co-defendants the

01:11:16PM **2**  defendant did not arrange for the accidents to take place, he

01:11:19PM **3**  did not recruit others to be involved in the scheme; further,

01:11:21PM **4**  he was only involved in one of the two staged accidents that

01:11:25PM **5**  were charged in the indictment and he was only a passenger

01:11:26PM **6**  rather than a driver.  Wheaten further asserts that although

01:11:29PM **7**  he did hire the co-conspirator attorney to represent him,

01:11:32PM **8**  Mr. Wheaten did not receive any compensation from the victim

01:11:36PM **9**  in this case as a result of the lawsuit.

01:11:38PM **10**  U.S. Sentencing Guideline 3B1.2 provides a two- to

01:11:41PM **11**  four-level reduction of the base offense level for those

01:11:43PM **12**  offenders found to be relatively less culpable than others

01:11:48PM **13**  involved in the same scheme or conspiracy, see *U.S. v.*

01:11:52PM **14**  *Buenrostro*, 868 F.2d 135, 137 (5th Cir. 1989).  The

01:11:59PM **15**  commentary after Section 3B1.2 provides that a mitigating

01:12:02PM **16**  role adjustment is available to the defendant who plays a

01:12:03PM **17**  part in committing the offense that makes him substantially

01:12:07PM **18**  less culpable than the average participant.  See Section

01:12:10PM **19**  3B1.2, Comment 3(A).

01:12:10PM **20**  The guidelines define minimal participant as one who

01:12:13PM **21**  demonstrates a lack of knowledge or undertaking of the scope

01:12:18PM **22**  and structure of the enterprise, Section 3B1.2, Comment 4.  A

01:12:20PM **23**  minor participant similarly defined as one who is less

01:12:23PM **24**  culpable than most other participants, but whose role cannot

01:12:25PM **25**  be described as minimal.  Same section of the sentencing

01:12:30PM   1   guidelines at Comment 5.

01:12:32PM   2         Amendment 794 to the commentary of Section 3B1.2

01:12:35PM   3   introduced a list of non-exhaustive factors that a sentencing

01:12:40PM   4   court should consider in determining whether to apply a

01:12:40PM   5   minimal or minor role reduction.  The factors are the degree

01:12:40PM   6   to which the defendant understood the scope and structure of

01:12:46PM   7   the criminal activity, the degree to which the defendant

01:12:48PM   8   participated in planning or organizing the criminal activity,

01:12:50PM   9   the degree to which the defendant exercised decision-making

01:12:53PM   10  authority or influenced the exercise of decision-making

01:12:56PM   11  authority, the nature and extent of the defendant's

01:12:58PM   12  participation in the commission of the criminal activity and

01:13:01PM   13  the degree to which the defendant stood to benefit from the

01:13:02PM   14  criminal activity.  That's Section 3B1.2 -- Section 3B1.2,

01:13:07PM   15  Comment 3(C).

01:13:08PM   16        The government responds that the presentence report

01:13:11PM   17  correctly determined that Wheaten does not qualify for role

01:13:12PM   18  reduction because he was equally culpable to the average

01:13:16PM   19  participant in the scheme.  The government states that

01:13:17PM   20  Wheaten was aware of the planning of the staged accident, was

01:13:21PM   21  involved in each aspect of the fraud and stood to gain from

01:13:22PM   22  the conspiracy.  As stated in the factual basis prior to

01:13:25PM   23  May 17, 2017, Wheaten agreed to participate in the staged

01:13:28PM   24  automobile accident with a tractor-trailer in order to obtain

01:13:31PM   25  money through fraud.  Before the accident, Wheaten

01:13:33PM  1   communicated by phone with two co-conspirators who were

01:13:36PM  2   organizing the collisions, Co-Conspirators A and C, and with

01:13:40PM  3   Troy Smith who was in the other vehicle that had a collision

01:13:42PM  4   that day.  On the way to New Orleans, the passengers, Randle,

01:13:45PM  5   Wheaten, and Davis, discussed their plan to participate in a

01:13:48PM  6   staged automobile accident that day.  Once in New Orleans,

01:13:50PM  7   Wheaten and the other passengers met with another car full of

01:13:52PM  8   people who were intending to stage an accident that day.

01:13:55PM  9   Subsequently, Wheaten retained Attorney A, sought unnecessary

01:13:58PM  10  medical treatment and filed a fraudulent lawsuit which was

01:14:01PM  11  only withdrawn after Wheaten was indicted.

01:14:03PM  12       The government provides additional facts in support

01:14:06PM  13  of its argument on page 7 of its response memorandum.  The

01:14:10PM  14  government contends that all the facts presented counsel

01:14:11PM  15  against the -- all the facts presented counsel against the

01:14:15PM  16  finding that Wheaten's role was minimal or minor.  The Court

01:14:18PM  17  will address each of the non-exhaustive factors set forth in

01:14:19PM  18  Section 3B1.2, Comment 3.

01:14:21PM  19       With respect to the degree of Wheaten's understanding

01:14:23PM  20  of the scope and nature of the criminal activity, the factual

01:14:27PM  21  basis demonstrates that Wheaten was aware of at least one

01:14:29PM  22  other car of co-defendants who sought to stage an accident on

01:14:32PM  23  the same day that Wheaten did and also demonstrates he was

01:14:34PM  24  aware that co-defendants Diggs and Randle brought fraudulent

01:14:37PM  25  legal claims arising from the staged accident in which

01:14:39PM  1   Wheaten also participated.  This factor counsels against a

01:14:44PM  2   role reduction.

01:14:45PM  3        Two, with respect to the degree to which Wheaten

01:14:46PM  4   participated in planning or organizing the offense, the

01:14:48PM  5   government asserts that Wheaten was integral to the

01:14:50PM  6   coordination of the scheme because he was a point -- the

01:14:53PM  7   point of contact between the passengers of the two vehicles

01:14:56PM  8   that got into staged collision on May 17, 2017.  In support

01:14:59PM  9   of that assertion, the government states among other things

01:15:02PM  10  that Wheaten communicated by phone both before and after the

01:15:05PM  11  May 17th collisions with two co-conspirators who were

01:15:08PM  12  organizing the collisions, Co-Conspirators A and C, and with

01:15:10PM  13  Smith who was in the other vehicle that had a collision on

01:15:13PM  14  May 17, 2017.  See also the factual basis which is Record

01:15:18PM  15  Document No. 220 at pages 3 through 4.

01:15:20PM  16       In addition, on the day of the staged collision,

01:15:21PM  17  Wheaten and his co-conspirators drove from Gibson, Louisiana,

01:15:24PM  18  to New Orleans, Louisiana, which takes approximately an hour

01:15:26PM  19  during which time Wheaten and his co-conspirators discussed

01:15:28PM  20  plans for the staged accident.  For example, a cover story

01:15:32PM  21  was developed that the passengers would say that they were

01:15:33PM  22  going to New Orleans to transport Diggs to the bus station.

01:15:37PM  23  That's in the presentence report at paragraph 36.

01:15:39PM  24       The Court concludes that these and other facts

01:15:42PM  25  contained in the factual basis support the conclusion that

01:15:44PM 1    Wheaten helped to plan the offense and this factor weighs

01:15:47PM 2    against the role reduction.

01:15:47PM 3        With respect to the degree to which the defendant

01:15:50PM 4    exercised decision-making authority or influenced the

01:15:54PM 5    exercise of decision-making authority, the government has not

01:15:55PM 6    provided facts in support of that factor and, therefore, that

01:15:56PM 7    factor weighs in favor of a role reduction.

01:15:59PM 8        With respect to the fourth factor, the nature and

01:16:02PM 9    extent of Wheaten's participation in the commission of

01:16:03PM 10   criminal activity, Wheaten rode in one of the vehicles that

01:16:05PM 11   caused an accident and he also brought a fraudulent lawsuit

01:16:08PM 12   and obtained medical treatment in attempt to increase the

01:16:11PM 13   value of his claims.  Accordingly, this factor weighs against

01:16:13PM 14   a role reduction.

01:16:14PM 15       With respect -- No. 5, the degree to which defendant

01:16:16PM 16   stood to benefit from the criminal activity, Wheaten stood to

01:16:19PM 17   benefit substantially from the legal action he commenced.

01:16:21PM 18   Defendant's argument that he did not ultimately receive any

01:16:24PM 19   compensation from the actual victim as a result of the

01:16:27PM 20   lawsuit is unavailing.  After all, the relevant factor looks

01:16:29PM 21   to how much the defendant "stood to benefit" from the scheme,

01:16:33PM 22   not how much he in fact benefited.  The fact that his lawsuit

01:16:37PM 23   was forestalled by his indictment in the case does not

01:16:39PM 24   warrant a finding his role was minimal or minor.  This factor

01:16:42PM 25   weighs against a role reduction.  I do note he did receive

01:16:44PM  1   $1,680 in advance settlement funds from Attorney A.

01:16:48PM  2        In sum, the Court concludes that Factor 3 pertaining

01:16:51PM  3   to defendant's role as an organizer and decisionmaker in the

01:16:54PM  4   offense weighs in favor of a role reduction.  However, the

01:16:55PM  5   remaining four factors weigh against the role reduction.  The

01:16:58PM  6   Court concludes a role reduction is not warranted and

01:17:01PM  7   defendant's objections are overruled.

01:17:01PM  8        Finally, the motion for downward departure and/or

01:17:04PM  9   adjustment from the sentencing guidelines.  Aberrant

01:17:08PM 10   behavior:  Wheaten citing the policy statements set forth in

01:17:10PM 11   Section 5K2.20 asserts the court should consider granting a

01:17:15PM 12   downward departure because Wheaten's conduct in the offense

01:17:16PM 13   represents aberrant behavior on his part.  Under the policy

01:17:20PM 14   statements set forth in U.S. Sentencing Guideline 5K2.20, the

01:17:23PM 15   court may depart downward only if the defendant committed a

01:17:25PM 16   single criminal occurrence or single criminal transaction

01:17:28PM 17   that, one, was committed without significant planning, two,

01:17:30PM 18   was of limited during, and, three, represents a marked

01:17:33PM 19   deviation from defendant -- by the defendant from an

01:17:36PM 20   otherwise law abiding life.  The commentary to this provision

01:17:39PM 21   explains that a fraud scheme generally would not meet such

01:17:42PM 22   requirements because such a scheme usually involves

01:17:45PM 23   repetitive acts rather than a single occurrence or single

01:17:47PM 24   criminal transaction and significant planning.  That's

01:17:49PM 25   Section 5K2.20, Comment 2.

01:17:50PM 1            Additionally, to determine whether to depart under

01:17:54PM 2    this policy statement, the court may also consider efforts to

01:17:57PM 3    mitigate the effects of this offense; same section of the

01:17:59PM 4    guidelines, Comment 3.

01:18:00PM 5            With respect to the first and second prongs, Wheaten

01:18:03PM 6    argues that his offense involved limited planning for a

01:18:06PM 7    single event which is precisely the kind of behavior

01:18:08PM 8    contemplated by the policy statement.  In support, Wheaten

01:18:12PM 9    asserts that according to the factual basis, Wheaten met with

01:18:13PM 10   the co-conspirators once at a fast food parking lot to

01:18:17PM 11   discuss the scheme.  Single staged accident in which he

01:18:19PM 12   participated happened shortly thereafter.

01:18:20PM 13           With respect to the third prong, which looks to

01:18:23PM 14   whether the offense is a marked deviation from an otherwise

01:18:27PM 15   law abiding life, Wheaten states among other things that he's

01:18:28PM 16   a 54-year-old man with no prior criminal record.  He served

01:18:31PM 17   in U.S. military from 1988 to 2002 and he's been consistently

01:18:34PM 18   gainfully employed throughout his adult life, is the father

01:18:37PM 19   of four adult children and is engaged to be married.  The

01:18:40PM 20   government does not contest Wheaten's assertion as to the

01:18:42PM 21   third prong, but argues Wheaten doesn't satisfy the first two

01:18:46PM 22   prongs set forth at Section 5K2.20.

01:18:48PM 23           With respect to the first prong, the government

01:18:50PM 24   alleges a series of facts at pages 5 and 6 of its response in

01:18:52PM 25   support of its argument that the offense involved planning.

01:18:56PM  1  Among other things, Wheaten admitted in his factual basis

01:18:57PM  2  that he agreed to participate in a staged automobile accident

01:19:01PM  3  prior to the day of the collision.  That's Record Document

01:19:04PM  4  220 at page 2.  Additionally, on the day of the staged

01:19:06PM  5  collision, Wheaten and his co-conspirators drove from Gibson,

01:19:08PM  6  Louisiana, to New Orleans, which takes approximately an hour

01:19:11PM  7  and discussed their plans to stage an accident during the

01:19:14PM  8  ride, same part of Document 220, 2.  Upon arrival in New

01:19:18PM  9  Orleans, the passengers of who rode -- who rode -- excuse me.

01:19:22PM  10  Upon arrival in New Orleans, the passengers who rode in the

01:19:25PM  11  car with Wheaten met in the parking lot with another car full

01:19:27PM  12  of people who also intended to get into a staged collision

01:19:30PM  13  and coordinated various logistics of the two collisions set

01:19:34PM  14  to take place.  After the collisions, Wheaten and the other

01:19:37PM  15  passengers of the Ford F-150 met with other -- met other

01:19:39PM  16  conspirators at Attorney Keating's office and hired Keating

01:19:42PM  17  to represent them in their fraudulent claims seeking damages

01:19:44PM  18  from the tractor trailer's insurer.

01:19:48PM  19       With respect to the second prong, which looks to the

01:19:52PM  20  duration of the defendant's involvement in the offense, the

01:19:54PM  21  government argues that Wheaten's conduct was not of

01:19:56PM  22  sufficiently limited duration to warrant a 5K2.20 departure.

01:19:59PM  23  In support, the government asserts that Wheaten's acts

01:20:03PM  24  spanned over three years, citing among other things, that the

01:20:05PM  25  staged collision occurred on May 17, 2017, Wheaten filed a

01:20:08PM  1   fraudulent lawsuit about one year after the collision and

01:20:10PM  2   Wheaten did not dismiss the lawsuit until September 4, 2020,

01:20:13PM  3   after he was indicted.  Given the duration of the scheme and

01:20:16PM  4   the level planning required not only for the stage of the

01:20:20PM  5   accident, but also for Wheaten's fraudulent lawsuit, the

01:20:21PM  6   Court concludes Wheaten has failed to satisfy the first and

01:20:24PM  7   second prong of Section 5K2.20.  Accordingly, a departure is

01:20:28PM  8   not warranted under that provision.  And with respect to the

01:20:30PM  9   downward adjustment for the minimal role, for the reasons

01:20:30PM  10  previously stated in addressing his third objection to the

01:20:30PM  11  presentence report, I conclude a downward departure based on

01:20:30PM  12  his role in the offense is not warranted.

01:20:41PM  13      All right.  I accept the rest of the presentence

01:20:42PM  14  report, which is not objected to, as true and correct and

01:20:47PM  15  consider that in connection with sentencing.

01:20:49PM  16      All right.  That being the case, we now go to any

01:20:55PM  17  mitigation sentences -- sentencing and give certainly the

01:21:00PM  18  defendant, Mr. Wheaten, as well as defense counsel, the

01:21:02PM  19  government, an opportunity to address the court with respect

01:21:03PM  20  to that.

01:21:04PM  21      Yes, sir.

01:21:05PM  22      MR. MITCHELL:  Judge, as I said, on behalf of

01:21:08PM  23  Mr. Wheaten, he has - he has lived a blameless life.  He has

01:21:11PM  24  worked.  He has a family.  This is the first such incident

01:21:15PM  25  he's ever been involved in.  He has a home.  He has a

01:21:18PM  1   full-time job and we were hoping for a bright future.  We

01:21:22PM  2   argue that this was an aberration.  Mr. Wheaten never engaged

01:21:26PM  3   in this kind of behavior and we're looking for the Court to

01:21:29PM  4   give him consideration for that.  If he were to have to serve

01:21:33PM  5   a prison sentence, he would have to give up his home and his

01:21:36PM  6   job and would be a significant burden.  For Mr. Wheaten, this

01:21:39PM  7   is a significant burden.  He's proud of the fact that he has

01:21:42PM  8   no criminal record, that he's always lived a good life, that

01:21:46PM  9   he served his country and done a good thing.  And the fact

01:21:49PM  10  that he's getting a felony conviction from this because of

01:21:53PM  11  his actions are punishment enough we would argue for him.

01:21:56PM  12  Judge, we're asking the court to consider giving him

01:21:58PM  13  probation, letting him do some home incarceration, anything

01:22:01PM  14  that would allow him to at least continue to live his life

01:22:05PM  15  and work his job so that he can, for example, pay towards the

01:22:08PM  16  restitution that the Court might order.  So that is in

01:22:13PM  17  essence what our argument is.

01:22:18PM  18            THE COURT:  Thank you, sir.

01:22:19PM  19            All right.  Mr. Wheaten, would you like to say

01:22:21PM  20  something on your behalf?

01:22:22PM  21            THE DEFENDANT:  Yes, sir, Your Honor.  Been a law

01:22:23PM  22  abiding citizen all my life.  Never been in trouble.  Gulf

01:22:29PM  23  War veteran, God-fearing man, children I love.  Never

01:22:33PM  24  disappointed pretty much nobody in my life.  I'm very

01:22:39PM  25  disappointed that I was in wrong place, wrong time.

01:22:42PM **1**      THE COURT:  It was much more than that.

01:22:44PM **2**      THE DEFENDANT:  I have -- I'm very sorry that I'm in

01:22:47PM **3**  this position.  Again, I really want to go on with my life.

01:22:52PM **4**  I'm very embarrassed about this situation because a lot of

01:22:55PM **5**  people have looked up to me.  Recently married my wife.  My

01:23:00PM **6**  fiancé, we married now.  And I've been living a good life.

01:23:04PM **7**  I've been working all my life since I was 16 years old.  I

01:23:07PM **8**  never been in trouble in my life.  And to be here today is

01:23:11PM **9**  mind boggling for me.  And I just hope you have mercy on me.

01:23:15PM **10**  That's all, Your Honor.  Thank you.

01:23:15PM **11**      THE COURT:  Thank you, Mr. Wheaten.  Anything by the

01:23:18PM **12**  government?

01:23:19PM **13**      MS. CARBONI:  Your Honor, as described in our

01:23:20PM **14**  sentencing memorandum, the government submits that a sentence

01:23:24PM **15**  of imprisonment is warranted in this case for several

01:23:29PM **16**  reasons.  Mr. Wheaten's conduct jeopardized the safety of

01:23:34PM **17**  other people on the road, the tractor-trailer driver who is

01:23:39PM **18**  driving an enormous vehicle and was unsuspecting of

01:23:46PM **19**  pedestrians, the passengers in the car.  Mr. Wheaten helped

01:23:49PM **20**  to coordinate the communication according to phone records

01:23:56PM **21**  with the other vehicle that also got into an accident, also

01:24:00PM **22**  jeopardized the safety of people.  This scheme, it did enrich

01:24:07PM **23**  many people and Mr. Wheaten clearly was hoping for the same.

01:24:12PM **24**      Though he has some college, though he has a job that

01:24:15PM **25**  apparently pays approximately $80,000 a year, though he has a

01:24:20PM 1   family that supports him and had a good upbringing, he

01:24:24PM 2   nonetheless committed a crime that risked other people and

01:24:27PM 3   that was motivated by greed.  And it's important for a

01:24:33PM 4   sentence to reflect the seriousness of that, of the abuse of

01:24:37PM 5   a court system, of the use of the police who had to respond

01:24:42PM 6   to two different accidents.  The government submits that it's

01:24:46PM 7   important for deterrence of Mr. Wheaten and of other people

01:24:52PM 8   who are staging these accidents all over the city to see that

01:24:57PM 9   a sentence would adequately take into account the seriousness

01:25:01PM 10  of this conduct.

01:25:05PM 11          THE COURT:  All right.  Thank you.

01:25:07PM 12          The nature of this offense is not that of a garden

01:25:10PM 13  variety theft.  The roots of your offense go much deeper than

01:25:14PM 14  that.  In connection with your efforts and the efforts of

01:25:16PM 15  others to defraud insurance companies, you were part and

01:25:19PM 16  parcel of a group effort to use our judicial system to

01:25:23PM 17  perpetuate your fraud.

01:25:25PM 18          As a result, valuable judicial resources have been

01:25:30PM 19  expended to address your criminal behavior as well as the

01:25:32PM 20  criminal behavior of your co-conspirators.  As a result of

01:25:36PM 21  your criminal conduct and the criminal conduct of your

01:25:38PM 22  co-conspirators, police officers responded to the scene

01:25:40PM 23  thereby wasting law enforcement assistance that should have

01:25:43PM 24  been utilized to legitimately respond to others in need.

01:25:46PM 25  Criminal conduct such as that exhibited by you, Mr. Wheaten,

01:25:48PM  1   and your co-conspirators require that resources be expended

01:25:51PM  2   by the victim insurance companies which may result in higher

01:25:54PM  3   consumer rates and diminish resources available to the

01:25:58PM  4   insurance companies in connection with their efforts to

01:26:01PM  5   respond to legitimate claims.  You agreed to medical

01:26:03PM  6   treatment arranged through your attorney in an effort to

01:26:05PM  7   effectuate the fraud.  Your conduct and the conduct of your

01:26:08PM  8   co-conspirators placed not only you, but others at risk of

01:26:12PM  9   physical injury and death.  The perpetration and scheme

01:26:14PM  10  continued for years.  Perhaps most significantly, conduct

01:26:17PM  11  such as yours causes the general public to question our

01:26:20PM  12  justice system.  Your conduct and the conduct of your

01:26:22PM  13  co-conspirators may lead fellow citizens to question the

01:26:27PM  14  motives of -- the motives of litigants who legitimately

01:26:29PM  15  suffered injury.  You may not have played a major -- as major

01:26:33PM  16  of a role as compared to others, but notwithstanding your

01:26:36PM  17  conduct was debilitating to a system of justice.  The court

01:26:40PM  18  recognizes that you have no prior criminal history, no

01:26:43PM  19  history of substance abuse, you honorably served in the

01:26:46PM  20  military and that you have a good job.  I have taken that

01:26:49PM  21  into consideration to determine the appropriate sentence, but

01:26:51PM  22  all that cannot in this court's opinion counter balance the

01:26:53PM  23  seriousness of the offense, its intended and unintended

01:26:58PM  24  consequences and your role in it.

01:26:58PM  25          I've considered the nature and circumstances of the

01:27:01PM  1    offense and the history and characteristics of the defendant

01:27:05PM  2    pursuant to 18 USC Section 3553, the need for the sentence

01:27:07PM  3    imposed to reflect the seriousness of the offense, promote

01:27:09PM  4    respect for the law and provide just punishment for the

01:27:12PM  5    offense, the need to afford adequate deterrence to criminal

01:27:15PM  6    conduct, the need to protect the public from further crimes

01:27:17PM  7    of the defendant.  I've also considered the kinds of

01:27:21PM  8    sentences and the sentencing ranges established as well as

01:27:23PM  9    the applicable guidelines and policy statements.

01:27:26PM  10        So pursuant to the Sentencing Reform Act of 1984 and

01:27:29PM  11   considering the provisions found in 18 USC Section 3553, it's

01:27:33PM  12   the judgment of this court, that the defendant, Ryan Wheaten,

01:27:35PM  13   be committed to the custody of the U.S. Bureau of Prisons to

01:27:38PM  14   imprisoned for a term of 10 months.  It's a finding of this

01:27:41PM  15   court that the defendant is not able to pay a fine and no

01:27:43PM  16   fine shall be imposed.  However, in accordance with 18 USC

01:27:46PM  17   Section 3663(a), restitution is mandatory.  Restitution in

01:27:50PM  18   the amount of $11,000 is owed to the victims; Financial

01:27:53PM  19   Indemnity Company is owed $6,000 and National Union Fire

01:27:57PM  20   Insurance Company $5,000.  The payment of restitution shall

01:27:59PM  21   begin while you're incarcerated.  Upon release, any unpaid

01:28:03PM  22   balance shall be paid at a rate of $250 per month.  The

01:28:08PM  23   payment is subject to increase or decrease depending on your

01:28:08PM  24   ability to pay.  Any payment made that is not payment in full

01:28:13PM  25   shall be divided proportionally among the victims.  The Court

01:28:14PM **1**   finds the defendant does not have the ability to pay interest

01:28:16PM **2**   on the restitution.  The Court waives the interest

01:28:18PM **3**   requirement in this case.

01:28:19PM **4**          Defendant who is jointly and severally liable for the

01:28:23PM **5**   injuries owed to the Financial Indemnity Company in the

01:28:24PM **6**   amount of $6,000 and National Union Fire Insurance Company in

01:28:27PM **7**   the amount of $5,000 with co-defendants Smith and Diggs and

01:28:31PM **8**   Randle shall make restitution to the victims except that no

01:28:34PM **9**   further payment shall be required after the sum of the

01:28:36PM **10**  amounts actually paid by all defendants has fully covered all

01:28:40PM **11**  the compensable injuries.  In accordance with 18, USC,

01:28:43PM **12**  Section 3663(a), restitution is mandatory.  Payments shall be

01:28:47PM **13**  made to the clerk, U.S. District Court and are to be

01:28:49PM **14**  forwarded to the following address:  U.S. Clerk's Office,

01:28:52PM **15**  Attention:  Financial Section, 500 Poydras Street, Room

01:28:55PM **16**  C-151, New Orleans, Louisiana, 70130.  U.S. Probation and the

01:28:58PM **17**  U.S. Attorney's Office are responsible for enforcement of my

01:29:01PM **18**  order.

01:29:02PM **19**         Upon release from imprisonment, you shall be placed

01:29:04PM **20**  on supervised release for a term of three years.  Within

01:29:07PM **21**  72 hours of release from the custody of the Bureau of

01:29:08PM **22**  Prisons, you shall report in person to the probation office

01:29:11PM **23**  in the district to which you are released.  While on

01:29:13PM **24**  supervised release, you shall not commit any federal, state

01:29:16PM **25**  or local crimes and be prohibited from possessing a firearm,

01:29:19PM   **1**   ammunition, destructive device or any other dangerous weapon.

01:29:21PM   **2**   You shall not possess a controlled substance, shall cooperate

01:29:24PM   **3**   in the collection of DNA and shall comply with all other

01:29:27PM   **4**   standard conditions of supervised release including the

01:29:28PM   **5**   following special conditions.

01:29:30PM   **6**          In order to facilitate the collection of restitution,

01:29:32PM   **7**   the financial disclosure condition is imposed.  In order to

01:29:36PM   **8**   facilitate the collection of restitution, the financial

01:29:37PM   **9**   restriction condition is imposed.  Pursuant to the mandatory

01:29:39PM   **10**  Victim Restitution Act of 1996, you shall pay any restitution

01:29:43PM   **11**  imposed by the judgment.

01:29:45PM   **12**         It's further ordered you immediately pay the United

01:29:47PM   **13**  States a special assessment of $100.  Forfeiture of your

01:29:51PM   **14**  right, title and interest in certain property may be ordered

01:29:54PM   **15**  consistent with the plea agreement and indictment.  You have

01:29:56PM   **16**  a right to appeal your conviction as well as your sentence.

01:29:59PM   **17**  If you cannot afford the cost of an appeal, those costs will

01:30:02PM   **18**  be paid by the United States including the filing fee, cost

01:30:04PM   **19**  of a transcript and an attorney to represent you on appeal.

01:30:07PM   **20**  Do you understand your right to appeal?

01:30:09PM   **21**         THE DEFENDANT:  Yes, sir.

01:30:10PM   **22**         THE COURT:  Do you wish your counsel to file a notice

01:30:12PM   **23**  of appeal on your behalf?

01:30:17PM   **24**         THE DEFENDANT:  I'm lost, Your Honor.

01:30:18PM   **25**         THE COURT:  Well, you can think about it.  You've got

01:30:19PM **1**   -- make sure if you're going to file a notice of appeal, if

01:30:22PM **2**   he asks you whether you think it -- whether you think it has

01:30:25PM **3**   merit or not, if he wants you to file a notice of appeal

01:30:27PM **4**   within -- what is it?  Ten days?

01:30:30PM **5**          MR. MITCHELL:  I think that's correct.

01:30:31PM **6**          THE COURT:  Whatever time period, please make sure

01:30:32PM **7**   that you do it.  Okay.

01:30:33PM **8**          MR. MITCHELL:  Will do, Judge.

01:30:34PM **9**          THE COURT:  You do understand your right to appeal

01:30:36PM **10**  though; is that correct?

01:30:37PM **11**         THE DEFENDANT:  I don't know what I'm going through

01:30:39PM **12**  right now, Your Honor.

01:30:39PM **13**         THE COURT:  Do you understand that you have a right

01:30:41PM **14**  to appeal my judgment to the U.S. Court of Appeals?

01:30:42PM **15**         THE DEFENDANT:  Yes, sir.

01:30:43PM **16**         THE COURT:  Okay.  Now let's talk about

01:30:45PM **17**  self-surrender.  He's doing fine while on bond, doesn't seem

01:30:49PM **18**  to have a problem at this point.  So let's talk about a

01:30:50PM **19**  self-surrender date, allow him to self-surrender, unless

01:30:54PM **20**  there's some objection that I'm unaware of.

01:30:54PM **21**         MS. CARBONI:  No, Your Honor.

01:30:55PM **22**         THE COURT:  So with all this going on with COVID and

01:30:58PM **23**  all this, I thought we would give it some time to let things

01:31:01PM **24**  calm down or so before he has to report.  And I don't know

01:31:03PM **25**  where they're going to have him report, whether it be the

01:31:06PM  1   halfway house or BOP facility.  I just have no idea how BOP

01:31:08PM  2   handles that.  That's up to them.  There's a number of

01:31:10PM  3   factors, as you know, they take into consideration when

01:31:13PM  4   determining an appropriate place of incarceration.

01:31:17PM  5          Let me ask probation.  How long does it usually take

01:31:18PM  6   for them to designate?  Two months?

01:31:21PM  7          THE PROBATION OFFICER:  Yes, we normally request

01:31:23PM  8   60 days so it usually takes about two months.

01:31:27PM  9          THE DEFENDANT:  Your Honor, may I say something?

01:31:29PM  10         THE COURT:  Yes.

01:31:29PM  11         THE DEFENDANT:  So I'm finna be incarcerated?

01:31:33PM  12         THE COURT:  Yes, sir.  10 months.

01:31:35PM  13         THE DEFENDANT:  I'm going to lose everything I worked

01:31:38PM  14   hard for, Your Honor.

01:31:38PM  15         THE COURT:  I explained my reasons --

01:31:39PM  16         THE DEFENDANT:  I mean, can I just be on probation at

01:31:42PM  17   the house and be sentenced to home at a certain time?  I

01:31:45PM  18   mean, I never been in trouble in my life.  Me.  This is hard

01:31:48PM  19   on me already.  I beat myself up a thousand times.  Why would

01:31:53PM  20   you put me away?  I've never been in trouble in my life.

01:31:57PM  21   Man, why would you take my livelihood away from me.  This is

01:32:00PM  22   one mistake I ever made in my life.

01:32:02PM  23         THE COURT:  All right.  Now, listen, you need to calm

01:32:04PM  24   down.

01:32:04PM  25         THE DEFENDANT:  No, I'm sorry, sir.

01:32:07PM 1          THE COURT:  I'm letting you self surrender, but you

01:32:07PM 2  need to calm down.

01:32:07PM 3          THE DEFENDANT:  I know, Your Honor.

01:32:08PM 4          THE COURT:  Okay.  I explained my reasons for

01:32:08PM 5  sentence.  I know you're not in agreement with it.  Nobody

01:32:10PM 6  wants to be incarcerated.  I understand that.  Okay.  I hope

01:32:13PM 7  that you come out a better man and I hope it will serve as a

01:32:17PM 8  deterrent to others among other things, but that's my

01:32:19PM 9  sentence.  So if you want to appeal, that's up to you.  You

01:32:21PM 10  have the right to do that.  I explained it to you.  So now

01:32:24PM 11  we're just talking about when you're going to surrender

01:32:27PM 12  because I'm going to let you self-surrender instead of

01:32:28PM 13  sending you to the marshals right now.  Okay.  That's all

01:32:31PM 14  we're talking about.

01:32:32PM 15          So that being the case, I want to give him enough

01:32:35PM 16  time to let this COVID thing sort of hopefully get past us a

01:32:40PM 17  bit from where it is now.  So let's do it the beginning of

01:32:46PM 18  May.  And if there's a real problem still existing in the

01:32:50PM 19  beginning of May, you can come to me and we can determine

01:32:54PM 20  whether or not any extension of time for self-surrender is

01:32:58PM 21  warranted.

01:32:58PM 22          MR. MITCHELL:  Okay.  Thank you, Judge.

01:32:59PM 23          THE COURT:  So sometime in the beginning of May

01:33:02PM 24  before noon.

01:33:03PM 25          THE CASE MANAGER:  The first Monday in May?

01:33:03PM  **1**          THE COURT:  What day is that?

01:33:06PM  **2**          THE DEFENDANT:  May 2nd.

01:33:06PM  **3**          THE COURT:  All right.  Now, we're permitting you

01:33:10PM  **4**   self-surrender on May the 2nd before noon at whatever the

01:33:12PM  **5**   designated institution is and U.S. Probation will go ahead

01:33:13PM  **6**   and let you know that.  Are you willing to self-surrender and

01:33:18PM  **7**   comply with the order of the court to do that?

01:33:18PM  **8**          THE DEFENDANT:  Yes, sir.

01:33:19PM  **9**          THE COURT:  Okay.  Is there anything further?

01:33:21PM  **10**          MR. MITCHELL:  Not at this time, Judge.

01:33:22PM  **11**          THE COURT:  All right.  Thank you, Counsel.  We'll be

01:33:24PM  **12**   in recess.

01:33:25PM  **13**          MS. CARBONI:  Your Honor, the terms of bond still

01:33:27PM  **14**   apply while the defendant is awaiting his self-surrendering.

01:33:32PM  **15**          THE COURT:  Yes.

01:33:38PM  **16**          THE CASE MANAGER:  And he's sentenced to Count 1.

01:33:41PM  **17**   What about Count 5?

01:33:42PM  **18**          THE COURT:  Any counts I need to dismiss?

01:33:44PM  **19**          MS. CARBONI:  Sorry.  We move to dismiss Count 5 of

01:33:46PM  **20**   the indictment.

01:33:46PM  **21**          THE COURT:  Okay.  Thank you.  So ordered.

01:33:48PM  **22**          MS. CARBONI:  Thank you.

01:33:48PM  **23**          THE COURT:  All right.  Thank you, counsel, for your

01:33:49PM  **24**   submissions.  Good luck.

01:33:51PM  **25**          THE CASE MANAGER:  All rise.

1                             * * * *

2              (WHEREUPON, the proceedings were adjourned.)

3                             * * * *

4                       REPORTER'S CERTIFICATE

5              I, Nichelle N. Wheeler, RMR, CRR, Official Court
   Reporter, United States District Court, Eastern District of
6  Louisiana, do hereby certify that the foregoing is a true and
   correct transcript, to the best of my ability and
7  understanding, from the record of the proceedings in the
   above-entitled and numbered matter.

8

9                        /s/ Nichelle N. Wheeler
                         Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                      OFFICIAL TRANSCRIPT
                         Page 27